Diana D. and Irving L. W. Gloninger v. Commissioner.
Gloninger v. Commissioner
Docket No. 887-62.
United States Tax Court
T.C. Memo 1963-310; 1963 Tax Ct. Memo LEXIS 34; 22 T.C.M. (CCH) 1635; T.C.M. (RIA) 63310; November 25, 1963
Frederick C. Fiechter, Jr., for the petitioners. Malin VanAntwerp and Francis J. Cantrel, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in petitioners' income tax for 1958 and 1959 in the respective amounts of $640.11 and $350.18. By amendment to the answer and reply thereto, respondent claimed and petitioners admitted an additional deficiency in the *35 amount of $126.46 for 1958 arising from unreported sale of stock. The issue in the case is whether a distribution in redemption of 108 shares of Irving L. W. Gloninger's stock in the Irving L. Wilson Company for $4,699.08 was essentially equivalent to a dividend. Findings of Fact Some of the facts are stipulated and they are found accordingly. Irving L. W. Gloninger and Diana D. Gloninger are husband and wife and they reside at Bala-Cynwyd, Pennsylvania. They filed their joint income tax returns for 1958 and 1959 with the district director of internal revenue at Philadelphia, Pennsylvania. On November 28, 1949, Irving L. W. Gloninger, who will be referred to as petitioner, formed the Irving L. Wilson Company, a Pennsylvania corporation, to deal primarily in uniforms for military schools. At all times relevant to these proceedings petitioner owned in excess of 55 percent of the outstanding stock of said corporation. At all times since 1954 the corporation had accumulated earnings and profits in excess of $40,000. In the initial stages of the business an important component was the activity of the company on behalf of the Hirsch-Tyler Company as a sales outlet for uniforms *36 manufactured by them on a commission basis. The balance of the goods sold was manufactured under contract for the Irving L. Wilson Company. Louis Hirsch, president and principal owner of the Hirsch-Tyler Company, was the second largest contributor of capital to the Irving L. Wilson Company. Petitioner was the largest contributor and the Russell brothers, operators of a Farragut Academy in New Jersey and a Farragut Academy in Florida, taken together, were the third largest stockholder of the Wilson Company and contributor of capital thereto. All of the shares were issued for cash. At all times, the Farragut Academy business accounted for not less than approximately 10 percent of the gross volume of the Irving L. Wilson Company. In the initial stages the activity on behalf of Hirsch-Tyler accounted for about 25 percent of its income. By the fall of 1954, the work on behalf of the Hirsch-Tyler Company became less attractive owing to the increase of the Irving L. Wilson Company sales of products manufactured directly for it, and it increasingly found itself in competition with the Hirsch-Tyler Company. Hirsch specifically requested that he be bought out. Accordingly, it was decided by *37 petitioner and Hirsch that the Wilson Company's activity for Hirsch-Tyler Company as a sales agent should cease, and that Hirsch would resign from the Wilson board of directors and sell his stock in the Wilson Company, in view of the increasingly competitive position of Hirsch-Tyler Company. Just about the same time, the Russell brothers asked that their stock be purchased by the Wilson Company, as they needed the capital involved for other business ventures of their own. Taken together this meant the picking up of 360 shares of the Wilson Company stock (200 belonging to Hirsch and 80 belonging to each of the Russell brothers) out of 1,722 shares then outstanding. Earlier in 1954, the corporation had redeemed 120 shares of its stock from the estates of John Rhoades Kearsley and Sarah J. Blatz, who were two of the original stockholders. The corporation paid $3,779.40 for these shares, or an average premium of $6,495 per share in excess of $25 par value. At December 31, 1953, the book value of the corporation's stock was $45.11 per share. Between December 16 and 20, 1954, petitioner personally purchased the stock from Hirsch and Russell brothers, borrowing from the Philadelphia National *38 Bank the sum of $13,000, $12,400 of which was utilized for these purchases. As security for this loan, petitioner and his wife signed a joint demand note to the bank, and petitioner assigned to the bank life insurance on his life with a stated amount value equal to the amount of the loan. It was the understanding of the bank that the loan would be repaid in quarterly installments over a five-year period, and the bank told petitioner that if any of the quarterly installments were missed, the bank would require assignment to it of the remainder of petitioner's life insurance. The corporation was not a joint maker or endorser of this note. It is stipulated that "[before] this program was crystallized, it had the approval of the directors of the company, and this approval was memorialized in the next directors meeting of the company, which was held on February 22, 1955." The minutes of said meeting show the following: Mr. Grant moved and Mr. Fiechter seconded a motion for the adoption of a resolution that the Company Treasury purchase 360 shares of Mr. Gloninger's stock at $43.51 per share (being $5.00 less than current book value) over a period ending January 1, 1960, subject to *39 the approval of the shareholders of record as of February 22, 1955. Subsequently the approval of all of the other shareholders of the corporation to the above arrangement was obtained. The joint loan of $13,000 obtained by petitioners on December 17, 1954 was paid off at the rate of $650 every three months until June 21, 1956 when the balance of $9,750 was paid off in full by proceeds of a loan in the same amount from The First Pennsylvania Banking and Trust Company. The latter loan was repaid at the rate of $650 every three months from July 1956 through October 1958, the sum of $2,600 was paid on January 6, 1959, and the balance of $650 on January 3, 1961. Both loans bore interest at the rate of 6 percent, and the amounts of interest paid annually on the loans by the petitioners were approximately as follows: Year
Amount
1955
$721.50
1956
565.50
1957
409.50
1958
249.70
1959
39.00
1960
39.00
The corporation declared and paid dividends in the years 1955 through 1959 on the dates and in the amounts pere share, as follows: Date Paid
Amount per Share
Feb. 22, 1955
$0.50
Feb. 28, 1956
1.50
Jan. 19, 1957
1.75
June 1, 1958
2.00
June 1, 1959
1.50
*40 In addition to the redemption of 120 shares stock in 1954, described above, the corporation also redeemed stock as follows: Number
Price
of
Per
Date
From Whom Redeemed
Shares
Share
1955
Irving L. W. Gloninger
72
$43.51
1956
Irving L. W. Gloninger
54
43.51
1956
C. G. Smith
40
25.00
1957
Irving L. W. Gloninger
44
43.51
1958
Luigi Onorato
80
50.00
1958
Irving L. W. Gloninger
72
43.51
1959
Irving L. W. Gloninger
36
43.51
The corporation's redemptions of stock from petitioner in the years at issue herein occurred on January 2, 1958, March 28, 1958, June 27, 1958, October 3, 1958, September 14, 1959, December 10, 1959, and December 14, 1959. On December 29, 1958, the corporation sold, from its treasury, 228 shares of its stock to Laurence Whyte for $50 per share. In the years 1955 through 1959 the corporation redeemed from petitioner a total of 278 of the 360 shares purchased by him in 1954 from Hirsch and Russell brothers. In 1958, in addition to the 72 shares redeemed by the corporation, petitioner sold 72 shares to Laurence S. Whyte at $43.51 per share. Only 84 shares of stock were reported sold on the return, thus *41 the sale of 60 shares of stock was not reported. The basis of the 60 shares to petitioner was $1,800, having purchased them at $30 per share in 1954 from Louis Hirsch. On the sale of these 60 shares at $43.51 per share, petitioner realized $2,610.60. The gain realized on the sale was $810.60. In his notice of deficiency respondent sent to petitioners he determined "that the redemption by the Irving L. Wilson Co. of its capital stock resulting in payments to you of $3,132.72 for 72 shares in 1958 and $1,566.36 for 36 shares in 1959 constituted taxable dividend income to you." The amount received, $4,699.08, during the years 1958 and 1959 in redemption of stock purchased by petitioner from Hirsch and the Russell brothers was a distribution that was essentially equivalent to a dividend. Opinion Section 302(a), Internal Revenue Code of 1954, provides a corporation's redemption of its stock will be treated "as a distribution in part or full payment in exchange for the stock" if any of the first four paragraphs of subsection (b) applies. Section 302(b)(1) provides: "Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend." Therefore *42 the single issue presented is whether the redemptions of petitioner's stock in 1958 and 1959 were not essentially equivalent to dividend payments to petitioner. We are dealing with a shareholder who controlled the corporation before and after it paid him $4,699.08 out of its earnings and profits in redemption of part of his stock. Since the distributions were not liquidating distributions the resemblance to dividend distribution is strong unless for some other reason it appears the transactions are removed from the category of a dividend. Petitioner argues dividend equivalence is not present here because the redemption of his stock in 1958 and 1959 served a business purpose of the corporation. The argument is that the redemption in the years in issue was part of a plan whereby he would buy the Hirsch and Russell brothers stock and the corporation would later redeem the stock from him. He argues that the business purpose of the corporation was to get rid of Hirsch as a stockholder and member of the board and accommodate the Russells who were the corporation's second best customer. He testified the corporation operated largely on bank loans and it had need of its credit and could *43 not in 1954 redeem the Hirsch and Russell brothers stock so he raised the funds by a bank loan and bought the stock with an understanding with the other directors that the corporation would redeem the stock; that shortly thereafter this arrangement was sanctioned by action of the board and by the other shareholders. It has been recognized that a distribution in redemption that serves a legitimate corporate business purpose will, under certain circumstances, qualify as not essentially equivalent to a dividend. John A. Decker, 32 T.C. 326, affd. per curiam 286 F. 2d 427. The question is one of fact to be determined by a consideration of all of the facts and circumstances. Sec. 1.302-2(b), Income Tax Regs., and John A. Decker, supra. From the above it will be seen that the desired objective was the sale of the stock interests of the Russells and Hirsch. The Russells and Hirsch were anxious to sell their stock. The business purpose of the corporation that would be served by such sale seems to be, under petitioner's argument, the withdrawal of Hirsch who was becoming a competitor and the accommodation of the Russells, *44 who were valued customers. Evidently, the retiring shareholders would have been satisfied, and the so-called business purpose accomplished, if anyone purchased the stock of the withdrawing shareholders. Without intimating that the desired objective would amount to a valid business purpose, it is cnough to say that it was accomplished by petitioner's acquisition of the stock. It is clear that the redemption thereafter by the corporation served no business purpose of the corporation. It is of no significance that the redemption was authorized by prior corporate resolution and consent of other shareholders. Petitioner's argument that the redemption was the last step in a plan designed to further the so-called business purpose is without merit. It was not the redemption that was designed to advance the business. The business purpose goal, even under petitioner's argument, was to accomplish the withdrawal of two minority stockholders. This goal would be attained by petitioner's acquisition of such shareholders' stock. The later redemption of such stock was unessential to the effectuation of the planned withdrawal. The redemption portion of the plan was designed to redeem petitioner's *45 stock at a profit to him with no business purpose served by such redemption. We hold for respondent on the issue presented. Decision will be entered under Rule 50.